**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CR. NO.  SA-21-CR-73-JKP** |
| | § | |
| **ASIA TSATENAWA** | § | |

<u>**MOTION TO SUPPRESS**</u>

 TO THE HONORABLE JUDGE OF SAID COURT:

 COMES NOW ASIA TSATENAWA, the Defendant in the above styled and numbered cause, and pursuant to the Fourth, Fifth, and Sixth Amendments to the United States Constitution, and Rule 12 of the Federal Rules of Criminal Procedure, respectfully moves the Court to suppress all evidence (including the pistols and drugs) and all statements, oral or written, allegedly made by the Defendant in connection with this cause.  In support of this motion, the Defendant would show the Court as follows:

**I.**

**Allegations in the indictment.**

 The indictment alleges the Defendant, on December 3, 2020, possessed a Century Arms pistol; and on December 8, 2020, possessed a Beretta pistol, a Smith &Wesson pistol, 28 grams or more of cocaine base, and a detectable amount of cocaine. (Doc 6).

**II.**

**Officer David Below's claims in his 12-3-20 report.**

 According to the San Antonio Police Department (SAPD) Report # SAPD20229882 by Officer David Below # 0040, on December 3, 2020, SAPD received a call for a black male sitting in a red truck parked at M&M Food Mart, 713 Pine Street, San Antonio, Texas 78203. *See* attached

police report. Below claimed the caller stated the black male pointed a gun at another person. *Id.*
Below claimed that when he arrived at the food mart, "we observed a black male sitting in a red
truck . . . in the driver's seat [and the suspect] saw the marked patrol vehicle and said, 'oh shit'
before jumping out of the vehicle and running away . . ." *Id.* Below claimed that the suspect "is
known to officers as a narcotics dealer in the area" and "always flees from police sometimes on foot,
in a vehicle or both." *Id.* Below claimed the suspect "left the windows and doors to the vehicle open
and unsecured when he fled." *Id.* Below claimed the suspect "left his cell phone, which he was using
and was in his hands when officers arrived on the driver's seat." *Id.* Below claimed the "phone was
open to [suspect's] personal Facebook page." *Id.* Below claimed the "vehicle was left parked sticking
out into the public roadway and blocking the entirety of a public sidewalk." *Id.* Below claimed, "An
inventory of the vehicle was performed due to apparently valuable property left in plain view." *Id.*
Below claimed, "A firearm was immediately located in the back seat of the vehicle within arm's
reach" of the suspect. *Id.* Below claimed the suspect's brother arrived at the location and claimed
the vehicle belonged to him, said someone told him the suspect was driving the vehicle, and he "gave
the keys to his brother [suspect] last night and allowed him to take the vehicle." *Id.*

### III.

**The body cams establish Officer Below made false claims in his report.**

SAPD Report # SAPD20229882 regarding the December 3, 2020 incident involved three
SAPD officers' body cameras: David Below, James Van Kirk, and Levon Harrison. The following
facts are taken from these body cams. Below and Van Kirk were riding together in a police vehicle.
Below said they were looking for a black male, black hoodie, in a red truck who pulled a gun on a
"Hispanic dude." As they approached the M&M Food Mart, a person ran from the vicinity of a red

2

truck. The person did not say "oh shit" before jumping out of the truck. The officers were unable to find the person, so they returned to the red truck.

As the officers approached the truck, Van Kirk said, "That's not his truck." The doors to the truck were closed and only one window was open on the truck - the driver's window. Van Kirk looked inside the open driver's window and did not seize anything. Below opened the passenger door, found nothing, and left that door open. Below then opened the driver's door and no phone was on the driver's seat, but a phone was under the center console. Van Kirk asked Below about when the person ran and Below said he could not see because of the sun.

As Below opened the rear driver's side door and began to search the truck, Van Kirk said, "We don't have a complaint or anything." Below then pulled a phone out from under the center console and put it on the driver's seat. Below then turned his body so his body cam was no longer showing the driver's seat or the phone. Below's body cam then showed the phone's home page and apps, and Below again turned his body diverting the body cam away from the phone. Below then tapped an app on the phone, diverted his body cam again away from the phone, and Below then announced to Van Kirk that, "It's Asia . . . It's his facebook." Below continued to search the truck. Van Kirk had nothing to do with searching the truck and kept a distance away. A black female then walked up to Below and gave him the truck keys.

Below asked what was wrong and Van Kirk responded that they had, "a refused person who said that a black male was holding a gun on a Hispanic male who left . . . We didn't see any of those things." Below said he still needed to check the truck and Van Kirk responded, "What do you want to do. It's a parked car that someone left. You have no authority to check anybody or anything. You have no authority to run after anybody or go find somebody or kick anybody's door down . . . We

don't have a victim. We didn't tell him to stop or have a light on. He got out of his car and he ran." Below asked if they should tow the truck, and Van Kirk responded, "I am not going to tow it. I have no authority to do it. It's on private property." Van Kirk said, "There's not even anything in plain view to give you authority to do anything." Below responded, "There's just a little bottle of cognac and that's it." Van Kirk said that was not illegal in a parked car and he had no care, custody, or control over the truck. The truck was not parked into the public roadway.

When Officer Harrison arrived, Below told Harrison what happened but that the sun was in Below's eyes when they drove up to the truck. Van Kirk remained in the patrol car during this. Below then entered the patrol car and told Van Kirk, "I know what you just did and I don't appreciate it. You're a jerk. Talking shit and texting." Another officer asked Below was happened, and Below stated, "So it's Asia. We don't have a complainant. Someone just called and said this guy pulled a gun on some Hispanic dude but the Hispanic dude did not call it in. We roll up and he jumps out of the truck running, but he leaves his phone there and his Facebook was pulling up. So it's him." Below then took the phone out of the truck and claimed he needed to inventory the truck. Below then discovered a Century Arms pistol under some cloth on the right rear passenger seat. This gun was not within arms reach of the driver.

A black male claiming to be "Pookie" arrived at the location and claimed to be Asia's brother. Pookie told Below that the truck belonged to Pookie. Below asked Pookie if he gave Asia the truck, and Pookie said he did not give Asia the truck. Below asked how Asia got the truck and Pookie again said he did not give Asia the truck. Pookie said he had no idea how Asia got the truck. After further questioning, Pookie again said he did not give Asia the truck. Pookie then finally claimed he gave Asia the truck. Below claimed two people were in the truck. Below admitted to Harrison, however, that he kept trying to get Pookie to say Pookie gave Asia the truck.

## IV.

**ATF used the false statements from Below to obtain an arrest warrant on 12-4-20.**

On December 4, 2020, Agent Beach from ATF submitted an affidavit in support of an arrest warrant for the Defendant being in possession of a weapon on December 3, 2020. In this affidavit, Beach claimed that on December 3, 2020 the following occurred: (1) SAPD received a report of a black male sitting in a red pickup truck near the M&M Food Mart; (2) the black male pointed a firearm at another person at the location; (3) SAPD arrived at the food mart and saw a black male, identified as Tsatenawa, as the only occupant of the vehicle seated in the driver's seat; (4) as SAPD arrived, Tsatenawa exited the vehicle and fled leaving the vehicle unattended and unsecured with the windows and door open; (5) Tsatenawa left his cell phone open to his personal Facebook and was seen on this phone before he ran from the area; (6) the vehicle was left in park blocking the roadway and sidewalk; (7) during an inventory, police found a gun within arm's reach of where Tstaenawa had been seated; (8) Tsatenawa's brother arrived at the location and stated he gave the keys to his brother the night before and allowed him to take the vehicle. These facts were mostly false.

## V.

**The 12-4-20 arrest warrant executed on 12-8-20.**

On December 8, 2020 at 2254, SAPD Det. Moeller requested a search warrant for apartment 2007 at a listed location. The affidavit in support of the search warrant stated: (1) On December 8, 2020 at about 2025, SAPD officers saw the Defendant leave an apartment and lock the door; (2) the Defendant walked with a juvenile to a car and entered the car; (3) the Defendant saw SAPD officers approaching and exited the car and fled; (4) the Defendant was caught a short distance away; (5) SAPD used the Defendant's key to conduct a sweep of the apartment; (6) the Defendant had 13.6 grams of marijuana on his person and 28.6 grams of cocaine in the center console of the car; (7) the

5

Defendant was unsure if any additional drugs were in the apartment; (8) agents believed the Defendant attempted to flee back to the apartment and so believe additional drugs are in the apartment. The search warrant was signed at 2254 on December 8, 2020. Body cam video, however, states that a law enforcement officer stated, "My gut tells me, but maybe there isn't shit in there - I don't know."

## VI.

## Argument.

### Defendant's statement.

When challenged, the statement of a defendant taken as a result of custodial interrogation must be proven to be voluntary. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Defendant herein has challenged the admissibility of his custodial statement to law enforcement officers. He is entitled to an out-of-court hearing where the burden is on the Government to prove the statement is admissible. *Jackson v. Denno*, 378 U.S. 368, 84 S.C. 1774, 12 L.E.2d 908 (1964).

In the case at bar, law enforcement claimed the Defendant, after being tackled by law enforcement and handcuffed and then having some rights read to him, stated there might be drugs in the apartment. This statement has been challenged by the Defendant and must now be proven to be voluntary. The Defendant is entitled to an out-of-court hearing where the burden is on the government to prove the statement is admissible.

### Warrantless seizure of the pistol from the truck.

When analyzing a search and seizure question, the initial inquiry must be: Is the Fourth Amendment applicable? In this case, we have action by officers of the government searching a private vehicle. The Fourth Amendment is clearly applicable to the arrest and search. *Dunaway v.*

6

*New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). There is a preference in the law for searches conducted pursuant to judicial supervision via the warrant process. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The officers in this case acted without a search warrant. A warrantless search is unreasonable *per se* under the Fourth Amendment of the United States Constitution, *Katz v. United States*, *supra*, unless the police activity can be justified under one of the generally recognized exceptions to the warrant requirement. There are six such exceptions: (1) automobile exception, (2) exigent circumstances, (3) consent to search, (4) search incident to a lawful arrest, (5) stop and frisk, and (6) plain view. None of these exceptions apply in the case at bar, therefore the search was illegal and all fruits of the illegal search and seizure must be suppressed. *Dunaway v. New York*, *supra*.

## The arrest warrant.

A Fourth Amendment violation occurs if a probable cause affidavit in support of an arrest warrant or search warrant included material misrepresentations or omissions. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021) ("The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants." *citing Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017)). In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court held the exclusionary rule does not apply to evidence obtained by a warrant, even if later held invalid, if law enforcement rely on the warrant in good faith under four circumstances: (1) the affiant intentionally or with reckless disregard for the truth misled the magistrate who issued the warrant; (2) the magistrate abandoned his or her judicial role; (3) the affidavit is patently inadequate to show probable cause; or (4) the warrant is so deficient on its face that officers could not presume its validity. *Id.; United States v. Massi*, 761 F.3d 512, 526

(5th Cir. 2014). The first exception is the *Franks* exception to the good-faith rule. *United States v. Breckenridge*, 782 F.2d 1317, 1322 (5th Cir. 1986). A defendant claiming the *Franks* exception must establish, by a preponderance of the evidence, that the affiant perjured or acted in reckless disregard for the truth. *Franks*, 438 U.S. at 156. An evidentiary hearing on this issue is required if an offer of proof establishes a deliberate falsehood or reckless disregard for the truth and, absent those facts, the affidavit fails to provide probable cause. *Id.*

In the case at bar, the December 4, 2020 Agent Beach affidavit in support of the arrest warrant for the Defendant being in possession of a weapon contained the following false statements: (1) SAPD arrived at the food mart and saw a black male, identified as Tsatenawa, as the only occupant of the vehicle seated in the driver's seat - there is no evidence the person was the Defendant; (2) as SAPD arrived, Tsatenawa exited the vehicle and fled leaving the vehicle unattended and unsecured with the windows and door open - there is no evidence the person was the Defendant and the body cams clearly show only one window was open and no doors were open; (3) Tsatenawa left his cell phone open to his personal Facebook and was seen on this phone before he ran from the area - there is no evidence the person was the Defendant and the body cams show the officer manipulated the cell phone to a Facebook page; (4) the vehicle was left in park blocking the roadway and sidewalk - the truck was not blocking the roadway; (5) during an inventory, police found a gun within arm's reach of where Tstaenawa had been seated - there is no evidence the person was the Defendant and the gun was not within arm's reach of the driver; and (6) Tsatenawa's brother arrived at the location and stated he gave the keys to his brother the night before and allowed him to take the vehicle - there is no evidence the person was the Defendant and his brother, Pookie, repeatedly told the officer that he did not give the truck to the Defendant and did not know how the Defendant obtained the truck or the keys to the truck. Without these facts, the affidavit merely states

8

an unidentified black male at the food mart in a red pickup pointed a firearm at another person at the location and a Century Arms pistol was found in the truck. This is insufficient to establish probable cause that the Defendant possessed the pistol.

**The search warrant.**

A reviewing court looks to the totality of the circumstances to determine if probable cause existed to to support issuance of a warrant. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause exists if, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006), *quoting Gates*, 462 U.S. at 238. Probable cause "means something more than mere suspicion." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004), *quoting United States v. Gordon*, 580 F.2d 827, 832-33 (5th Cir. 1978). "Probable cause requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." *Froman*, 355 F.3d at 889.

In the case at bar, the search warrant affidavit states SAPD was executing the above invalid arrest warrant on the Defendant after the Defendant exited an apartment and entered a car in a parking lot an unknown distance from the apartment. Law enforcement had no evidence the Defendant possessed either guns or drugs in the apartment. The Defendant fled the car and was arrested within "a short distance." The affidavit makes the general conclusion without stating any facts that the Defendant made an "immediate attempt to flee back to the apartment." The affidavit did not state law enforcement stated, "My gut tells me, but maybe there isn't shit in there - I don't know." This is insufficient evidence to provide probable cause to believe weapons or drugs were in the apartment.

9

## VII.

## Timing of this motion.

Undersigned counsel was recently appointed to this case in place of a prior defense attorney. (Doc 54). After finally receiving the discovery in this case, counsel has been reviewing the discovery and has met with the Defendant to discuss the discovery. After meeting with the Defendant last week, counsel is now filing this motion to suppress. Given these facts and good cause, the Defendant requests the Court consider this motion timely filed.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully moves the Court to set this motion upon the Court's docket for an evidentiary hearing. The Defendant further prays that the Court order suppression, for all purposes, of the following:

1. All testimony concerning any statements or declarations allegedly made by the Defendant.

2. All statements, oral or written, allegedly made by the Defendant.

3. All evidence, tangible or otherwise, that may be shown to have been a product of any statements allegedly made by the Defendant.

Respectfully submitted,

GROSS & ESPARZA, P.L.L.C.

/s/ Michael C. Gross
Michael C. Gross
State Bar No. 08534480
1524 North Alamo Street
San Antonio, Texas 78215
(210) 354-1919
(210) 354-1920 (Fax)

Attorney for the Defendant,
ASIA TSATENAWA

10

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts stated in the foregoing are true and correct.

Executed on the 18th day of May, 2022.

/s/ Michael C. Gross

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Brian Nowinski, Assistant United States Attorney, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216, and I certify that there are no non-CM/ECF participants.

/s/ Michael C. Gross

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CR. NO.  SA-21-CR-73-JKP** |
| | § | |
| **ASIA TSATENAWA** | § | |

## <u>ORDER ON MOTION TO SUPPRESS</u>

The Motion to Suppress is hereby:


_____ GRANTED    And the following evidence is ruled inadmissible in

this case:




_____ DENIED


SIGNED AND ENTERED on this the _____ day of _____, 2022.




_____
UNITED STATES DISTRICT JUDGE