UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

v.  CR. NO. SA-21-CR-73-JKP

ASIA TSATENAWA

**O R D E R**

Before the Court is Defendant Asia Tsatenawa's Motion to Suppress Evidence. ECF No. 57. The Government responded (ECF No. 60), and on August 10, 2022, the Court held a hearing on the motion. The Court also allowed the parties to submit supplemental briefing and both sides presented briefs for the Court's consideration. ECF Nos. 70 and 71. The Court admitted all evidence submitted by the parties for the purpose resolving the motion. For the reasons set forth below, the Court denies the motion.

**I. Background**

On December 3, 2020, SAPD responded to a call reporting that a black male in a red truck parked at the M&M Food Mart (713 Pine Street, San Antonio, TX, 78203) pulled a gun on a Hispanic male.[1] As the officers pulled up to the red truck, a black male exited the vehicle and ran. *See* Gov. Ex. 1 (Officer Below Body Camera Video #1), at 0:55. Officers pursued the man, but were unable to apprehend him. *Id*.

---

[1] The Incident Detail Report states 'Black Male BLACK HOODIE IN A RED TRUCK PULLED A GUN IN PL TO Hispanic Male WHITE SHIRT." Gov't. Ex. 8 at 2. "Hispanic Male TOOK OFF FROM LOC UNK IF ON FOOT OR IN A VEH . . . Black Male STILL AT LOC . . . UNK INTOX." *Id*. "C DID NOT SEE MALES ARGUING . . . JUST SAW Black Male PULLING GUN ON Hispanic Male" *Id*. "b-male fled from truck . . .b/m fled wb from loc . . .blk hat/beanie . . .grey top." *Id*.

The Officers returned to the M&M Food Mart to secure the truck. *Id*. at 3:20-3:25. Upon returning to the red truck, Officer Below began opening the doors and conducting a search of the front and back seat. *Id*. He found a cell phone under the center console which was not protected by a password. Upon opening the cell phone, Officer Below opened the Facebook app and determined the identity of the black male was Asia Tsatenawa (Defendant), a gang member with felony record and known to police. *Id*. During this initial search of the vehicle, several bystanders approached police and identified the truck as belonging to Defendant's brother[2], known as "Pookie." *Id*. A woman approached the officers and gave them the keys to the truck, confirming it belonged to Defendant's brother. *Id*. The woman told Officer Below "it's not his (Defendant's) truck." *Id*. at 10:40-11:10. The woman returned several minutes later and handed Officer Below her phone with "Pookie" on the line who informed Below that he was on his way to the M&M Food Mart to get his truck. *Id*. at 14:05

Later, Officer Harrison arrived and Officer Below informed him he contacted his superiors and been advised to ticket the car for blocking the sidewalk and have it impounded. Gov. Ex. 2 (Officer Below Body Camera Video #2). As Officer Harrison ticketed the car, Officer Below began an inventory search which is standard procedure for all impounded vehicles. *Id*. During this search, Officer Below discovered a Century Arms International, model RAS47, 7.62x39mm pistol lying on the backseat, within arm's reach of the driver's seat, beneath an article of clothing. *Id*. "Pookie" arrived but was informed that he could no longer take the vehicle with him, as it would be impounded. *Id*. Upon questioning, "Pookie" admitted to giving his brother, the Defendant, the keys to his car the night before. *Id*.

Based on facts he gathered personally, from other law enforcement agencies, and sources of information, Special Agent Chris Beach with the Bureau of Alcohol, Tobacco, Firearms, and

---

[2] Defendant's brother's name is Atseko Salvator Factor. See Gov't. Ex.8 (Incident Detail Report).

Explosives, submitted an affidavit in support of an arrest warrant pursuant to Title 18 USC 922(g)(1), Felon in Possession of a Firearm. *See* Beach Aff. (ECF No. 3, Criminal Complaint).

On December 8, 2020, SAPD detectives located and arrested the Defendant at an apartment complex at 11500 Huebner Road in San Antonio. *See* Gov. Ex. 3 (Search Warrant for 11500 Huebner Rd. Apt. 2007). Officers observed Defendant leave an apartment with a juvenile and enter his car. *Id*. Officers approached the Defendant, who attempted to flee, but ultimately arrested him, handcuffed him, and placed him in the back of a police car. Officers searched the Defendant and his car pursuant to the arrest, finding 13.6 grams of marijuana and 28.6 grams of cocaine. *Id*. Additionally, Officers used the apartment key to enter and perform a protective sweep. *Id*. Detective Gilbert Guerra read the Defendant his Miranda rights and proceeded to question him regarding the apartment he just left. *See* Gov. Ex. 5 (Gilbert Guerra Body Camera Video). During this conversation, Defendant told the detective the name and location of his cocaine dealer. *Id*.

Using these facts and the Defendant's criminal history, Detective Jerred Moeller obtained a search warrant for Apartment 2007. *See* Gov. Ex. 3 (Search Warrant for 11500 Huebner Rd. Apt. 2007). Prior to execution of the search warrant, the Defendant received a second *Miranda* warning, and chose to cooperate fully in the search. *See* Gov. Ex. 6 (Dustin Kilpatrick Body Camera Video), at 2:52:32. Detectives found two pistols, 261 grams of cocaine, 33.4 grams of crack cocaine, 425 grams of marijuana, 39 grams of pills, and 5 digital scales. *See* Gov. Ex. 7 (Detective Moeller Report). Defendant was charged with Possession with Intent to Distribute Cocaine and Crack Cocaine, Felon in Possession of a Firearm, and Possession of a Firearm in Furtherance of Drug Trafficking. The initial charge of Felon in Possession of a Firearm was later dismissed by this Court. *See* ECF. No. 59.

## II. Burden of Proof

The Fourth Amendment protects against unlawful searches and seizures by requiring law enforcement obtain a warrant for arrest and search. U.S. Const. Amend. IV Because the initial searches[3] in this case were done without a warrant, the Government bears the burden to prove by a preponderance of the evidence that the searches were lawful. *United States v. Ross*, 456 U.S. 798, 807-08 (1982). Standing to challenge the validity of a search is established by showing a "legitimate expectation of privacy" in the area or item searched. *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978).

## III. Discussion

### A. Officer Below's Initial Search of the Vehicle – Abandonment

By fleeing the scene and leaving the truck unlocked in the parking lot, the Defendant effectively abandoned his vehicle and gave up any reasonable expectation of privacy. "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts…The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978) (citing *United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973)). Additionally, *U.S. v. Barlow* states, "[t]he motive of the police in obtaining evidence is irrelevant because it is the reasonableness of the defendant's expectation [of privacy] that is to be assessed, not the conduct of the police." *United States v. Barlow*, 17 F.3d 85, 88 (5th Cir.

---

[3] The initial search after officers returned to the M&M Food Mart and the "inventory search."

1994) (citing *United States v. Edwards*, 441 F.2d 749 (5th Cir. 1971)). "A defendant who abandons or disclaims property prior to the search does not have standing to challenge a search subsequent to his abandonment or disclaimer of that property." *U.S. v. Iraheta*, 764 F.3d 456, 461 (5th Cir. 2014).

Defendant contends there is no evidence to support the conclusion that he was the person who fled the scene when officers approached the red truck on December 3, 2020. ECF No. 57 at 8; ECF No. 71 at 3. The following facts are undisputed regarding the December 3rd encounter. A 911 call was placed at 3:18 p.m. and the matter was assigned to a patrol unit at 3:20 p.m. Gov't Ex. 8 at 1. The patrol unit was en route at 3:20 p.m. and arrived at the M&M Food Mart at 3:26 p.m. *Id*. Officers received a report that a black male pulled a gun on a Hispanic male. *Id*. at 2. The Hispanic male left the scene, but the black male was still at the location. *Id*. When officers arrived at the M&M Food Mart, there was only one person in the red truck – a black male in the driver's seat. The black male exited the red truck and fled the scene. *Id*. Officers chased the man, but they were unable to apprehend him. The officers immediately returned to the site where the red truck was parked and searched the vehicle. Officers ran the license plate of the red truck. (Officer Below Body Camera Video #1), at 4:10-4:15.  Officer Below found the cell phone underneath the center console, tapped on the Facebook icon to open the Facebook mobile application, and determined Defendant was the individual who fled the scene. The cell phone was not password or passcode protected. A woman approached Officer Below and informed him, without any prompting or questioning from the officers, the truck did not belong to the Defendant. She informed officers that Defendant's brother owned the truck and gave officers the keys to the truck. She also informed officers that Defendant went to a residence on Cactus Street (the woman stated the residence was "Tracy's house"). Defendant's brother arrived at the scene

and eventually told officers he allowed Defendant to use his truck the day prior to the subject incident.

Based on these undisputed facts, the Court concludes Defendant was the person who exited the truck and ran from the officers. Officers properly responded to a 911 call involving the use of a weapon. Defendant abandoned any reasonable expectation of privacy he may have had when he fled from the police. *U.S. v. Barlow*, 17 F.3d at 88. "A defendant has abandoned his reasonable expectation of privacy when he leaves an item in a public place." *Id*. The Texas Penal Code defines a public place as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." Tex. Pen. Code § 1.07(a)(40). The parking lot of a convenience store is a public place. *See Gonzalez v. State*, 664 S.W.2d 797, 801 (Tex.App.—Corpus Christi 1984); *York v. State*, 342 S.W.3d 528, 537 n. 29 (2011). "The list of places in the statute is non-exclusive." *See Loera v. State*, 14 S.W.3d 464, 467 (Tex.App.—Dallas 2000, no pet.). The relevant question is whether the public has any access to the area. *Id*. Defendant exited the vehicle, which was parked in a public place, and fled the scene. The Court finds that the Defendant abandoned his reasonable expectation of privacy under these circumstances and cannot complain about the search of the truck and cell phone.

This case closely resembles the facts of *United States v. Self,* No. MO-09-CR-66, 2009 WL 10680655 * 3-4 (W.D. Tex. Sept. 8, 2009). In that case, the Defendant also fled from his vehicle upon sight of the police, leaving behind an unlocked iPhone that law enforcement used to determine his identity. There, the court held that "…Defendant retained no reasonable expectation of privacy in the truck or its contents, including the iPhone, after jumping the motel

fence and leaving the scene." *United States v. Self*, No. MO-09-CR-66, 2009 WL 10680655 (W.D. Tex. Sept. 8, 2009), *aff'd*, 414 F. App'x 611 (5th Cir. 2011). Therefore, once the Defendant fled the scene, he lost any reasonable expectation of privacy regarding the vehicle and its contents. Subsequently, Officer Below's search of the vehicle and the use of the phone to identify the Defendant were both lawful.

To the extent Defendant contends some unknown person exited the truck and fled the scene, the initial search of the vehicle and cell phone were still lawful under the circumstances presented in this case. "It is now clear that a [police officer], entitled to be on the property where the car was located, may search a vehicle to determine the identity of its owner." *U.S. v. Edwards*, 441 F.2d at 754. Here, officers responded to a 911 call of criminal activity involving a gun. When officers arrived, the person seated in the driver's seat of the truck described in the 911 call exited the vehicle and fled the scene. After an unsuccessful chase, officers returned to the crime scene and searched the subject vehicle which was located on public property. Officers ran the license plate and searched the vehicle. During the search, officers located a cell phone that was not passcode protected. Examination of the Facebook application on the phone led officers to believe Defendant was the person who fled the scene. A warrantless search under these circumstances does not violate the Fourth Amendment.

**B. Good Faith Exception to the Exclusionary Rule and Request for a Franks Hearing**

Under the good-faith exception, "[t]he Fourth Amendment's exclusionary rule will not bar the admission of evidence obtained with a warrant later found to be invalid so long as the executing officers acted in reasonable reliance on the warrant." *United States v. Alvarez*, 127 F.3d 372, 373 (5th Cir. 1997) (citing *United States v. Leon*, 468 U.S. 897, 920 (1984). The good-faith exception does not apply "when the issuing magistrate was misled by information in an

7

affidavit that the affiant knew or reasonably should have known was false." *United States v. Woerner*, 709 F.3d 527, 534 (5th Cir. 2013). A warrant is void "if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause."

In this case, Agent Beach was the affiant of the December 4, 2020 affidavit submitted to the Magistrate Judge. The arrest warrant was issued on December 4, 2020, and executed on December 8, 2020. Defendant seeks to attack the affidavit by challenging statements made by Officer Below rather than statements made by Agent Beach – the affiant. The Court is aware that Agent Beach relied, in part, on statements made by Officer Below, but Defendant has the burden of proving that actual affiant (Agent Beach) made false statements or omitted information from the affidavit. Defendant has not met his burden.

To qualify for a Franks hearing, Defendant must prove that there were false statements necessary to the finding of probable cause included in the warrant affidavit that the affiant included knowingly and intentionally, or with reckless disregard for the truth. To prove this violation, the Defendant must show perjury or reckless disregard by a preponderance of the evidence, and that setting the false material to one side makes the affidavit insufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant contends Officer Below made the following misrepresentations or omissions in his report.

1. Affidavit states that the suspect observed in the truck who ran was identified as Tsatenawa and was known to SAPD officers as a narcotics trafficker but does not mention that the identification was NOT made until Officer Below searched the vehicle, found Defendant's phone, and opened his Facebook app to determine his identity.

2. "Tsatenawa left the vehicle unattended and unsecured with the windows and door open." – All doors were closed and one window was rolled all the way down. Doors were unlocked.
3. "Tsatenawa left his cellular phone in the vehicle, which was left open to his personal Facebook page." – Officer Below opened the Facebook app in order to determine the identity of the suspect who ran from the truck.
4. "The vehicle was left in park, blocking the roadway and the sidewalk." – The vehicle was only blocking a sidewalk, not a roadway, and was parked in a parking lot.

*See* Beach Aff. *See* Gov. Ex. 1 (Officer Below Body Camera Video #1).

While there is proof that Officer Belows's report has inaccuracies that are cited in the affidavit, the holding in *U.S. v. Wake* disqualifies this case for a Franks hearing. *See* Beach Aff. According to *Wake*, *Franks* only applies when the actual affiant asserts the misrepresentations, not when the affiant reasonably relies on misrepresentations asserted by another. "Therefore, the person whose deliberate falsehood or reckless disregard for the truth at issue is … the affiant …" *United States v. Wake*, 948 F.2d 1422, 1428-29 (5th Cir. 1991). The Court concludes Defendant is not entitled to a *Franks* hearing. The Court also concludes the good-faith exception to the exclusionary rule applies to the arrest warrant executed by officers to arrest the Defendant.

**C. December 8, 2020 Search Warrant for Defendant's Apartment**

Defendant contends Detective Moeller's affidavit does not establish probable cause to issue a warrant to search his apartment. The Government argues that Detective Moeller's affidavit establishes probable cause and the good-faith exception to the exclusionary rule applies to search of Defendant's apartment. See ECF No. 70 n. 1.

Courts conduct a two-part inquiry to determine whether a seizure conducted pursuant to a search warrant violates the Fourth Amendment. *U.S. v. Allen*, 626 F.3d 830, 835 (5th Cir. 2010). First, a court decides if the seizure falls within the good-faith exception to the exclusionary rule. *Id*. The good-faith inquiry is limited "to the objectively ascertainable question whether a

9

reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. (*citing United States v. Leon*, 468 U.S. 897, 920-21 (1984)). "This is true even if the evidence in the affidavit on which the warrant was based was not sufficient to establish probable cause." *Id*. "Principles of judicial restraint and precedent dictate that, in most cases, [the court] should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* resolve the matter." *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988).

In some circumstances an officer does not have reasonable grounds for believing that a warrant was properly issued. *Leon*, 468 U.S. at 922-23. "An officer may not obtain a warrant based on a bare bones affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *United States v. Barrington*, 806 F.2d 529, 532 (5th Cir. 1986) (quoting *Leon*, 468 U.S. at 922 n. 24). "Bare bones affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). "An affidavit is bare bones if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable." *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997).

The Court concludes that the good-faith exception to the exclusionary rule applies. A reasonably well-trained officer would not have thought that the search was illegal despite the magistrate's authorization and the officers relied on the warrant in objectively reasonable good-faith. The Court also finds Detective Moeller's affidavit was not bare bones. Because the good-faith exception apples, the Court does not reach the second part of the inquiry to "determine

whether the magistrate issuing the warrant had a substantial basis for believing there was probable cause for the search." *Allen*, 625 F.3d at 835.

**D. Defendant's post-*Miranda* Statements**

The Defendant challenges the voluntariness of his statements to police after he had been Mirandized. Defendant was read his *Miranda* rights while handcuffed sitting in a police car. *See* Gov. Ex. 5 at 00:35-2:00 (Gilbert Guerra Body Camera Video). Officer Guerra did not raise his voice, or otherwise use violence or intimidation on the Defendant. *Id*. The officer did indicate that cooperation and sharing the name and location of his cocaine dealer could help with his state charges, however, statements of benefits of cooperation do not reach the level of coercion required to render statements made after said promises involuntary. *See United States v. Santiago*, 410 F.3d 193, 199 (5th Cir. 2005).

Defendant also challenges his post-*Miranda* statements to officers prior to the execution of the warrant to search his apartment. After obtaining the warrant to search Defendant's home, officers returned to Defendant's apartment (with Defendant) to search it. ECF No. 60-2 at 1 (Supplement Report of Detective Moeller). The report states,

> Myself [Detective Moeller] and other TAG detectives returned to P-1's [Defendant] apartment to conduct the search warrant. I read P-1 the search warrant and his Miranda Rights. P-1 stated that he understood his rights and we were entering the location pursuant to a search warrant. P-1 stated he had more "dope" and a pistol in the apartment and was given the opportunity to show me where the narcotics and pistol were.

*Id*.

"When a defendant challenges the voluntariness of a statement, the Government bears the burden of proving voluntariness by a preponderance of the evidence." *United States v. Mendez*, 885 F.3d 899, 910 (5th Cir. 2018). Statements are voluntary if, "under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Id*. "A statement cannot be involuntary in the absence of coercive police activity." *Id*.

The Court reviewed Officer Guerra's and Officer Kilpatrick's[4] bodycam videos and finds there was no coercive or improper police activity surrounding his arrest, placement in the officer's vehicle, Officer Guerra's reading of the *Miranda* warnings, and Defendant's waiver of his *Miranda* rights. "A defendant's waiver of his *Miranda* rights is effective only if voluntary." *U.S. v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005). The finds Defendant's statements and waiver of rights immediately after his arrest were voluntary.

The Court also finds Defendant's waiver of *Miranda* rights and statements during the search of his apartment were voluntary. The Government presented Detective Moeller's supplement report, which demonstrates he read the *Miranda* warnings to Defendant and Defendant stated he understood those rights before speaking with officers during the search of his apartment. There is no evidence indicating Defendant's waiver of his *Miranda* rights and statements to the police were the product of improper police conduct.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence (ECF No.57) is **DENIED**.

**It is so ORDERED.**
**SIGNED this 24th day of August, 2022.**



_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE

---

[4] Officer Kilpatrick's bodycam video captured the *Miranda* warnings given by Detective Moeller to the Defendant prior to the search of Defendant's apartment. Gov't Ex. 6 (Kilpatrick bodycam at 2:52:30-3:00:00).