**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CR. NO.  SA-21-CR-73-JKP** |
| | § | |
| **ASIA TSATENAWA** | § | |

<u>**DEFENDANT'S MOTION TO RECONSIDER MOTION TO SUPPRESS DENIAL**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ASIA TSATENAWA, the Defendant in the above styled and numbered cause, and submits this motion to reconsider the denial of the motion to suppress and in support would show:

**I.**

In general.

The Defendant filed a motion to suppress the Defendant's statement, the fruits of the warrantless seizure of the pistol from the truck, the fruits of the Defendant's arrest warrant, and the fruits of the search warrant for the Defendant's apartment. (Doc 57). After a hearing, the court denied the motion to suppress. The Defendant incorporates into this motion to reconsider all facts, argument, and case law submitted in the motion to suppress and post-hearing briefing, and submits the following and requests the court reconsider the motion to suppress.

**II.**

The arrest warrant.

A Fourth Amendment violation occurs if a probable cause affidavit in support of an arrest warrant included misrepresentations or omissions. *Franks v. Delaware*, 483 U.S. 154 (1978);

1

*Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021) ("The *Franks* case arose in the context of a search warrant, but its rationale extend to arrest warrants."). *Terwilliger* stated that if the warrant affidavit contains materially false statements or omissions, "*Franks* requires the court to determine whether, excluding such errors and omissions, the remaining 'corrected affidavit' establishes probable cause for the warrant's issuance." *Id.*, citing *Winfrey v. Rogers*, 882 F.3d 187 (5th Cir. 2018).  "Since *Franks v. Delaware*[], it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey, supra, citing Franks, supra*. "[T]he warrant requirement is meant 'to allow the magistrate to make an independent evaluation of the matter.'" *Id.* "It requires affiants to 'set forth particular facts and circumstances underlying the existence of probable cause,' including those that concern the reliability of the information and the credibility of the source to avoid 'deliberately or reckless false statement[s].'" *Id.*

The critical inquiry is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471 (1963). To aid in this inquiry, the Fifth Circuit "has established guidelines to determine whether the connection between the illegal arrest and the discovery of the evidence has become so attenuated as to dissipate the taint and ensure the admissibility of the evidence." *United States v. Tookes*, 633 F.2d 712 (5th Cir. 1980). "Among these factors are: (1) the proximity of the illegal arrest to the procurement of the challenged evidence; (2) the presence of intervening circumstances between the arrest and the discovery of the evidence; and (3) the circumstances under which the arrest was made." *Id.*

In *United States v. Leon*, 468 U.S. 897 (1984), the Court held the exclusionary rule does not apply to evidence obtained by a warrant, even if later held invalid, if law enforcement rely on the warrant in good faith under four circumstances: (1) the affiant intentionally or with reckless disregard for the truth misled the magistrate who issued the warrant; (2) the magistrate abandoned his or her judicial role; (3) the affidavit is patently inadequate to show probable cause; or (4) the warrant is so deficient on its face that officers could not presume its validity. In *United States v. Alvarez*, 127 F.3d 372 (5th Cir. 1997), the Fifth Circuit stated that "[t]he Fourth Amendment's exclusionary rule will not bar the admission of evidence obtained with a warrant later found to be invalid so long as the executing officers acted in reasonable reliance on the warrant." *Id. citing United States v. Leon, supra*. "However, if the warrant was issued in reliance on an affiant's deliberate or reckless material misstatement, the *Leon* good faith exception will not apply." *Id.* "The party attacking the warrant bears the burden of establishing by a preponderance of the evidence that the misrepresentation was made intentionally or with reckless disregard for the truth." *Id. citing United States v. Namer*, 680 F.2d 1088, 1094 (5th Cir. 1982). "If a search warrant affidavit contains a false, material statement made intentionally or with reckless disregard for the truth, the reviewing court must excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause." *Alvaraz, supra, citing Franks, Namer*; *United States v. Reilly*, 76 F.3d 1271 (2th Cir. 1996).

The Court in *Leon* "emphasized that 'the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *Reilly, supra, citing Leon; Franks* ("evidence seized pursuant to a warrant based on materially false and misleading information is inadmissable at trial."). The court in *Reilly* stated that, "We have previously held that recklessness may be inferred when omitted

information was 'clearly critical' to assessing the legality of a search." *Id.* When evidence is obtained as a result of illegal police conduct, not only must that evidence be suppressed, but also all evidence that is the fruit of the illegal conduct. *Id.* The Supreme Court's decision in *Franks v. Delaware* outlines the consequences flowing from a misrepresentation in an application for a search or arrest warrant. The Court held that if a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . (and that if) with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks, supra*.

A violation of 18 U.S.C. § 1001(a) occurs if a person knowingly and willfully: (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry. *United States v. Moyer*, 674 F.3d 192 (3rd Cir. 2012); *see United States v. Breckenridge*, 782 F.2d 1317 (5th Cir. 1986). "In looking at the language of the statute, [18 U.S.C.] § 1519 'rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with the intent to impede or influence a federal investigation.'" *Moyer, supra*. "A person of ordinary intelligence would understand a police report to be a 'record' or 'document,' and would also read the language 'any matter within the jurisdiction of [a] department . . . of the United States' to include an FBI investigation." *Id.* A defendant claiming the *Franks* exception must

4

establish, by a preponderance of the evidence, that the affiant perjured or acted in reckless disregard for the truth. *Franks*, 438 U.S. at 156. An evidentiary hearing on this issue is required if an offer of proof establishes a deliberate falsehood or reckless disregard for the truth and, absent those facts, the affidavait fails to provide probable cause. *Id.*

In the case at bar, the December 4, 2020 Agent Beach affidavit in support of the arrest warrant for the Defendant being in possession of a weapon contained the following false statements: (1) SAPD arrived at the food mart and saw a black male, identified as Tsatenawa, as the only occupant of the vehicle seated in the driver's seat – there was two occupants in the vehicle – there is no evidence the person was the Defendant; (2) as SAPD arrived, Tsatenawa exited the vehicle and fled leaving the vehicle unattended and unsecured with windows and door open – there is no evidence the person was the Defendant and the body cams clearly show only one window was open and no doors were open; (3) Tsatenawa left his cell phone open to his personal Facebook and was seen on this phone before he ran from the area – there is no evidence the person was the Defendant and the body cams show the officer manipulated the cell phone to a Facebook page; and there's no evidence that the Facebook was the Defendant's; (4) the vehicle was left in park blocking the roadway and sidewalk – the truck was not blocking the roadway; (5) during an inventory, the police found a gun within arm's reach of the driver; and (6) Tsatenawa's brother arrived at the location and stated he gave the keys to his brother, the night before and allowed him to take the vehicle – there is no evidence the person was the Defendant and his brother Pookie repeatedly told the officer that he did not give the truck to the Defendant and did not know how the Defendant obtained the truck or keys to the truck. Without these facts, the affidavit merely states and unidentified black male at the food mart in a red pickup pointed a firearm at another person at the location and a Century Arms

pistol was found in the truck.  This is insufficient to establish probable cause that the Defendant possessed the pistol.

III.

Whether reasonable suspicion justified the seizure.

"The seminal Supreme Court case that controls the court's Fourth Amendment analysis is *Terry v. Ohio*[, 392 U.S. 1 (1968)]." *United States v. Wali*, 811 F.Supp.2d 1276 (N.D. Tex. 2011). "That case holds that an investigatory stop is permissible when the police officer has reasonable suspicion that 'criminal activity may be afoot.'" *Id.*, *citing Terry*, 392 U.S. at 30. "Fifth Circuit authority, including *Roch* and *Martinez*, however, holds that an investigatory stop is permissible only when the police officer has reasonable suspicion that 'criminal activity is afoot.'" *Wali*, *citing United States v. Martinez*, 486 F.3d 855, 859 (5th Cir. 2007); *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993). "Although the chosen language in *Terry* contrasts with the chosen language in *Roch* and *Martinez*, the outcome is the same for the purposes of the court's analysis." *Wali, supra*. "As discussed above, reasonable suspicion as to a criminal activity can exist only when the police officer has an independent basis of belief, rising above the level of a 'mere hunch or unparticularized suspicion,' that all elements necessary for a criminal act are present." *Id. citing United States v. Jaquez*, 42 F.3d 338, 340-341 (5th Cir. 2005). "Without some form of independent basis of belief – arising out of either a reported tip, a police officer's visual observation, or another source – to establish that all necessary elements to a criminal activity are present, there can be no reasonable suspicion justifying a warrantless search or seizure." *Wali, supra*. "Without such a basis, there is simply no reasonable suspicion that criminal activity may be afoot, and there is certainly no reasonable suspicion that criminal activity *is* afoot." *Id.* (emphasis in original). "Even if there is a

practical distinction between the two standards, the court reaches the same result because the evidence provided by the government is too tenuous, without further inquiry, to show that criminal activity "was" afoot or "may have been" afoot." *Id.* Nothing was done by Officer Below prior to the stop to show that the tip was reliable in its assertion of illegality.

In this case, the 911 caller provided information on the color of the vehicle "a red truck" and the occupant being a black male in a black hoodie. Body cam video shows that Officer Below observed a red truck in the vicinity described by the 911 caller from down the street at the four way stop sign a block away. Accordingly, the only verified information that Officer Below had at the time he effected the seizure of the truck concerned the color of the truck and physical proximity to M&M Food Mart. Notably absent, however, was any verified information that "criminal activity was afoot." *Martinez, supra*, 486 F.3d at 862; *Jaquez, supra*, 421 F.3d at 340-41). Officer Below did not see a Hispanic or black male wearing a black hoodie or anything that resembled the criminal activity that the 911 caller claimed in his tip, except the color of a truck parked at the M&M Food Mart. There was no indication that anything illegal ever happened. "An officer's mere hunch of unparticularized suspicion is not sufficient; rather, a minimal level of objective justification for the stop must be present." *Wali, supra, citing Jaquez, supra*, 421 F.3d at 340-41. Prior to the stop there was nothing about the truck to indicate that there was a black male wearing a black hoodie inside it or that there was a weapon inside the truck. To make such a determination, further inquiry would have been necessary – inquiry that did not transpire until after Officer Below blocked the truck and preventing the occupants from leaving freely and seeing the driver flee. However, after-acquired evidence or information cannot be used to establish reasonable suspicion for the initial stop.

This case is a classic example of "putting the cart before the horse." In this instance, Officer Below quite literally jumped the gun. While a police officer's right to effect a *Terry* stop necessarily

authorizes the use of reasonable force to secure a suspect, such a stop must be predicated on reasonable suspicion of criminal activity. *See United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999). In the review of video evidence, the court saw nothing to indiciate that the occupants of the truck posed an observable threat to anyone. The driver did get startled by the way the officers cut off the road in their approach and ran away, but that cannot be reasonably interpreted that a crime was being committed or had ben committed. As there was no reasonable suspicion to detain the occupants of the truck, no authority existed to effect a *Terry* stop. For example, if Officer Below had observed a black male in a black hoodie actually holding a gun or what appeared to be a weapon, or a Hispanic male, instead of just a red truck parked at the M&M Food Mart, his approach would have been justified.

In the case at bar, as in *Wali, supra*, the police conduct resulting in the seizure of the truck and weapon "is at odds with the teachings of" *Florida v. J.L.*, 529 U.S. 266 (2000), and *Roch*. *Wali, supra*. "The facts of this case are nearly identical to the facts of *J.L.*," and there is "no appreciable distinction between these facts and those of *Roch* with respect to the seizure." *Wali, supra*. "In this case, like in *J.L.*, the 911-caller gave a description as to the suspect's age, race, clothing, and location." *Wali, supra*. None of the identifying information regarding the caller was known to Officer Below at the time he seized the truck. "[T]he caller's complaint in this case was the functional equivalent of an anonymous tip." *Id.* "Accordingly, the outcome of this case necessarily aligns with the outcome in *J.L.*" *Id.*

In *Roch*, the Fifth Circuit held "a tip from a *known informant*, who had provided reliable information in the past, did not give police officers reasonable suspicion to effect an investigatory stop. *Wali, supra* (emphasis in original)*. "The tipster told police that the suspect was in possession of firearms and described the suspect as a blonde, white male with body tattoos, and further stated

that the suspect drove an orange and white pickup truck and was staying at a local motel room with his girlfriend." *Id.* "Police officers shortly thereafter set up surveillance on the local motel and eventually saw an orange and white pickup truck pull out of the parking lot with a male driver and femal passenger." *Id.* "The truck soon pulled into a gas station, and law enforcement officers moved in immediately." *Id.* "A Houston police officer 'threw down' on the suspect and ordered him to get on the ground." *Id.* "The suspect was then handcuffed, and a federal agent observed the butt of a firearm sticking out of a bag in the truck." *Id., citing Roch*, 5 F.3d at 896.

In the case at bar as in *Roch*, "The police officers in *Roch* actually had more descriptive information to work with" than Officer Below did in this case, "and that information came from a known informant who had provided reliable information to officer's in the past, unlike the 911-caller in this case." *Wali, supra, citing Roach, supra*. "In *Roch*, the informant gave police officers a description of race and other identifying personal features including blonde hair and body tattoos." *Id.* "The informant further provided officers with a vehicle description, a location, and notification that the suspect would be accompanied by his girlfriend." *Id.* "The officers were able to verify the informant's reported information identifying the suspect from their surveillance of the local motel." *Id.* "The Fifth Circuit nevertheless held in *Roch* that all of this was insufficient to amount to 'reasonable suspicion' and justify an investigatory stop, principally because the police officers did not observe any criminal activity from their surveillance." *Id.*

In the case at bar as was held in the above cited cases, the court should determine that the 911 caller's complaint in this case was the functional equivalent of an anonymous tip. As in the above cited cases, this court simply cannot square the search and seizure of the truck and the weapon in this case with the holdings of *J.L.* and *Roch*. Although the type of approach used by Officer Below appears to occur with some frequency with respect to some officers of the San Antonio Police

9

Department, such an approach is clearly contrary to the Supreme Court and Fifth Circuit precedent. Allowing this conduct to stand would eviscerate the holdings of *J.L.* and *Roch* and render them bereft of any legal significance. *Roch* continues to enjoy vitality and widespread application in this circuit. *See, e.g., United States v. Gomez*, 623 F.3d 265, 270 n.2 (5th Cir. 2010); *Martinez*, 486 F.3d 855, 859-64; *United States v. Hernandez*, 477 F.3d 210, 214 n. 12 (5th Cir. 2007). This court should have no basis to depart from this clearly established law.

The critical issue in this case, as was the issue in *Roch*, is whether Officer Below had reasonable suspicion to seize the truck and its occupants for illegally possessing a firearm. "Even an investigatory stop would be proper only if based on reasonable suspicion that criminal activity is afoot." *Wali, supra, citing Roch and Terry v. Ohio*, *both supra*. "If an officer observes suspicious activity, the Fourth Amendment requirement is satisfied if there is a 'minimal level of objective justification for the officer's actions, measured in the light of the totality of the circumstances.'" *Id. citing United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc).

Here Officer Below did not observe anything other than a red truck parked at the M&M Food Mart. Officer Below did not observe a criminal offense being committed or any questionable behavior before he made the investigatory stop in front of the truck blocking it in so the occupants of the truck could not leave freely. "The reasonable suspicion required for effecting a serizure, however, does not always require personal observation." *Wali, supra*. "It can be based on information provided by a tipster if the information possesses 'an inidicia of reliability.'" *Id.* "Relevant factors to consider with respect to whether an indicia of reliability is present include: the credibility and reliability of the informant, the specificity of information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale." *Id.*, citing

*Martinez, supra*, 486 F.3d at 861 (*quoting United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1999)).

IV.

Protective sweep.

Under the Fourth Amendment, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court, Eastern District of Michigan*, 407 U.S. 297, 313 (1972). Warrantless entry of a home is presumptively invalid under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). When a suspect is arrested in the suspect's home, "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325 (1990). "It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* "[I]ncident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* "Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

If a person is arrested in a vehicle, "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332 (2009). "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception

to the warrant requirement applies." *Id.* In determining the Fourth Amendment scope of a search incident to arrest, the Court stated that, "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." *Chimel v. California*, 395 U.S. 752 (1969). "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Id.* "And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." *Id.* "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs – or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." *Id.* If the search, however, goes far beyond the arrestee's "person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him . . . There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area." *Id.* The scope of such a search is unreasonable under the Fourth Amendment. *Id.*

In the case at bar, the protective sweep of the apartment after the Defendant was arrested in his parked car in the parking lot went far beyond the Defendant's person and area in the car where he might have obtained either a weapon or evidence that could be used against him. There was no constitutional justification, in the absence of a search warrant for the apartment, for extending the search and protective sweep beyond the car in the parking lot to the apartment. The scope of the search away from the parked car in the parking lot to include the apartment was unreasonable under the Fourth Amendment.

Additionally, the Defendant was in custody, so the warrantless apartment search should not have been undertaken without a warrant given there were no exigencies of the situation to render such a warrantless search objectively reasonable. Because the state has shown neither exigent circumstances to immediately enter Defendant's house nor an unforseen danger that arose once they arrested the Defendant, there is no excuse for the failure to obtain a search warrant to search for a dangerous person believed to be in the apartment. Even if the warrant requirement is inapplicable, there is no justification for relaxing the probable cause standard. If something less than probable cause is sufficient, respondent argues that it is no less than individualized suspicion – specific, articulable facts supporting a reasonable belief that there are persons on the premises who are a threat to the officers. There were no such specific, articulable facts to justify the warrantless search of the apartment. Possessing an arrest warrant, the officers were entitled to search anywhere the actual arrest took place; being the parking lot near the Defendant's vehicle.  Once he was found, however, the search for him was over and there was no longer the particular justification for entering the apartment and entering any rooms that had not yet been searched. That strategy is sensible if one wishes to search the apartment, but it is a surprising choice for an officer worried about safety, who need not risk entering the apartment at all.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests the court reconsider the denial of the motion to suppress and, after considering the points raised in this request for reconsideration and prior pleadings by the Defendant, grant the motion to suppress in all things.

Respectfully submitted,

GROSS & ESPARZA, P.L.L.C.

/s/ Michael C. Gross
Michael C. Gross
State Bar No. 08534480
1524 North Alamo Street
San Antonio, Texas 78215
(210) 354-1919
(210) 354-1920 (Fax)

Attorney for the Defendant,
ASIA TSATENAWA

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Brian Nowinski, Assistant United States Attorney, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216, and I certify that there are no non-CM/ECF participants.

/s/ Michael C. Gross

14